**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593
MDD_TJSchambers@mdd.uscourts.gov

January 26, 2017

LETTER TO COUNSEL:

      RE:    *James Pettiford v. Carolyn W. Colvin, Acting Commissioner of Social Security*
               Civil No. TJS-15-3503

Dear Counsel:

On November 18, 2015, the Plaintiff, James Pettiford ("Mr. Pettiford"), petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 14 & 15.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF Nos. 2 & 7.) I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will I will grant the Acting Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

Mr. Pettiford protectively filed his applications for DIB and SSI on March 6, 2012. (Tr. 204-212.) In both applications, he alleged that he became disabled on April 1, 2008. (Tr. 92, 206, 240.) His claims were denied initially and on reconsideration. (Tr. 141-50.) A hearing was held before an Administrative Law Judge ("ALJ") on March 10, 2014. (Tr. 40-91.) On April 22, 2014, the ALJ determined that Mr. Pettiford was not disabled under the Social Security Act. (Tr. 26-34.) On September 24, 2015, the Appeals Council denied Mr. Pettiford's request for review, making the ALJ's decision the final, reviewable decision of the SSA.

The ALJ evaluated Mr. Pettiford's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Mr. Pettiford was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since April 1, 2008. (Tr. 28.) At step two, the ALJ found that Mr. Pettiford suffered from the severe impairments of "degenerative disc disease of the cervical and lumbar spine status post lumbar fusion (in August 2012); and degenerative changes in the right shoulder." (*Id.*) At step three, the ALJ found that Mr. Pettiford's impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings") (Tr. 28-30.) Before proceeding to step four, the ALJ determined that Mr. Pettiford retained the residual functional capacity ("RFC")

      to perform light work as defined in 20 C.F.R. 404.1567(B) and 416.967(b) except he can frequently reach overhead; and occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl but can never ladders, ropes or scaffolds.

(Tr. 30.)

      At step four, the ALJ determined that Mr. Pettiford was unable to perform any past relevant work. (Tr. 33.) At step five, the ALJ determined that, considering Mr. Pettiford's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 33-34.) Accordingly, the ALJ found that Mr. Pettiford was not disabled under the Social Security Act. (Tr. 34.)

      Mr. Pettiford raises three arguments on appeal: (1) the ALJ did not give proper weight to his treating physician's opinion; (2) the ALJ's RFC assessment is not supported by substantial evidence; and (3) the ALJ improperly discredited Mr. Pettiford's complaints of pain. I will address each of these arguments below.

      Mr. Pettiford first argues that the ALJ did not give the appropriate weight to the opinion of his treating physician. A treating physician's opinion is entitled to controlling weight if two conditions are met: (1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques and (2) it is consistent with other substantial evidence in the record. *See Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). Where these conditions are not met, the regulations instruct an ALJ to consider several factors in deciding the weight to assign to the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors include: (1) the examining relationship between the physician and the claimant; (2) the treatment relationship between the physician and the claimant; (3) the extent to which a medical opinion is supported by relevant evidence; (4) the consistency of a medical opinion with the record as a whole; and (5) whether the physician's opinion relates to an area in which they are a specialist. *Id.* The ALJ is not required to apply these factors formulaically. *See Laing v. Colvin*, No. SKG-12-2891, 2014 WL 671462, at *8 (D. Md. Feb. 20, 2014)

      Where a treating physician's opinion is not supported by clinical evidence, is inconsistent with other substantial evidence, or is based on a short-term treating relationship, its probative value is significantly reduced. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Craig*, 76 F.3d at 590*; Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence[.]") Regardless of the weight given to the opinion of a treating source, the ALJ is required to "explain in the decision the weight given to . . . any opinions from treating sources, nonteaching sources, and other non-examining sources who do not work for [the SSA]." *See* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(h)

      Although the record in this case contains only one contemporaneous treatment note from Dr. Higgs-Shipman, the ALJ considered her to be Mr. Pettiford's treating physician.[1] (Tr. 32.)

---

[1] The only contemporaneous treatment note from Dr. Higgs-Shipman is her preoperative

Mr. Pettiford's preliminary argument that the ALJ should have considered Dr. Higgs-Shipman as a treating physician raises a non-issue because the ALJ did just that. Because the opinions that the doctor expressed in her December 2012 assessment (Tr. 531-35) were inconsistent with other evidence in the record, the ALJ assigned Dr. Higgs-Shipman's findings little weight. (Tr. 32.) The ALJ noted that Dr. Higgs-Shipman's opinion that Mr. Pettiford requires a cane to ambulate was contradicted by his own testimony before the ALJ.[2] (Tr. 31-32, 89, 534.) In addition, Dr. Higgs-Shipman's opinion that Mr. Pettiford was limited to sitting, walking, or standing for just two hours during an eight hour day, and for no longer than 30 minutes at a time is not supported by any objective medical evidence. (Tr. 32.) Furthermore, these restrictions are inconsistent with Mr. Pettiford's self-reported activities of daily living, such as cooking his meals, cleaning his home, doing laundry, driving, and shopping without assistance. *See Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) ("The ALJ logically reasoned that the ability to engage in such activities is inconsistent with Johnson's statements of excruciating pain and her inability to perform such regular movements like bending, sitting, walking, grasping, or maintaining attention."). Because Dr. Higgs-Shipman's opinions are not supported by clinical evidence, are based on a limited examining and treating relationship, and are contradicted by Mr. Pettiford's self-reported activities, the ALJ appropriately assigned little weight to the opinions.

Mr. Pettiford also argues that Dr. Higgs-Shipman's various diagnoses and her recommendation that he undergo a lumbar fusion prove that her opinion was entitled to greater weight. But Dr. Higgs-Shipman's diagnoses and recommendation of a lumbar fusion are not in dispute. The dispute as to Dr. Higgs-Shipman's opinions is the degree to which Mr. Pettiford's impairments led to corresponding functional limitations. The diagnoses that Dr. Higgs-Shipman made simply do not reflect what impact Mr. Pettiford's conditions had on his functional abilities. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("However, a [diagnosed] disorder is not necessarily disabling. There must be a showing of related functional loss."); *Caldwell v. Astrue*, No. 11-070-RLV-DSC, 2012 WL 2395196, at *3 (W.D.N.C. Mar. 2, 2012) ("The mere diagnosis of a condition is not sufficient evidence to prove a severe impairment, nor to corroborate a doctor's opinion that an individual is disabled.").

Dr. Higgs-Shipman's opinions are also contradicted by other substantial evidence in the record, namely the opinions of the State agency medical consultants. (Tr. 32.) As explained by the ALJ, the opinions of the State agency medical consultants are consistent with the evidence in the record, including the improvement in Mr. Pettiford's range of motion and pain levels after his lumbar fusion in 2012. (*Id.*) Mr. Pettiford argues that the ALJ should not have given such weight to the opinions of the State agency medical consultants because they did not discuss his lumbar fusion. But the opinion of a non-examining physician need not be discarded simply because additional evidence is entered into the record at a later time. In this case, the ALJ considered evidence related to Mr. Pettiford's lumbar fusion and discussed it in her opinion. In addition, it is unclear how Mr. Pettiford believes this evidence contradicts the opinions of the State agency

---

evaluation conducted in August 2012. (Tr. 32, 466-70.) The record contains numerous treatment notes from other medical sources, many of which refer to Dr. Higgs-Shipman as the "referring physician." But these treatment notes do not contain Dr. Higgs-Shipman's findings or opinions.

[2] Mr. Pettiford's testimony that he does not require a cane is consistent with the opinion of the State agency medical consultants. (Tr. 121, 131.)

medical consultants. After all, the opinions are generally consistent with the post-lumbar fusion evidence discussed by the ALJ. This Court's role is not to reweigh the evidence and substitute its opinion for the ALJ. *See Craig*, 76 F.3d at 589 ("In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary."). The ALJ's evaluation of the medical opinion evidence is supported by substantial evidence.

Mr. Pettiford's second argument is that the ALJ's RFC finding is not supported by substantial evidence. RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96–8p, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ must consider even those impairments that are not "severe" in formulating the RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Craig*, 76 F.3d at 594; 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id*. The ALJ must also assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96–7p, 1996 WL 374186 (S.S.A. July 2, 1996).[3]

The ALJ discussed Dr. Higgs-Shipman's August 2012 assessment of Mr. Pettiford, which was a preoperative evaluation conducted before his lumbar fusion procedure. (Tr. 32, 466-70.) In this assessment, besides muscle aches and pain in his joints, Dr. Higgs-Shipman does not document any significant physical abnormalities. The absence of documentation of significant physical abnormalities undermines Dr. Higgs-Shipman's opinion that Mr. Pettiford was so extremely limited in his functional abilities. The ALJ properly took this lack of documentation into account in her decision. (Tr. 32.) Contrary to Mr. Pettiford's argument, the ALJ did not conclude that Mr. Pettiford did not require the lumbar fusion procedure. Nor did the ALJ ignore the timing of the evaluation; immediately after discussing the evaluation, she noted that Mr. Pettiford underwent the lumbar fusion. (*Id.*) The significance of the evaluation to the ALJ's findings is in what it lacks: clinical documentation of the type of abnormalities that would be expected given Dr. Higgs-Shipman's opinion about Mr. Pettiford's extensive functional limitations.

Mr. Pettiford argues that the ALJ's consideration of his reported pain levels do not appropriately account for his use of medication for pain management. But the ALJ referenced

---

[3] Since the ALJ's decision was rendered, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029 (S.S.A. March 16, 2016). SSR 16-3p instructs ALJs to focus not on judging a claimant's "credibility," but rather on evaluating the consistency of a claimant's alleged symptoms with other evidence in the record, including objective medical evidence, the claimant's statements over time, and medical opinions.

Mr. Pettiford's medication regimen and noted that he tolerated his medication with no side effects. (Tr. 31-32.) The ALJ did not conclude that Mr. Pettiford was free of pain, and the ALJ did not ignore evidence that his pain levels were partially controlled because of pain medication. Instead, she considered Mr. Pettiford's pain levels over time and concluded, consistent with the opinions of the State agency medical consultants, that the pain levels did not preclude Mr. Pettiford from performing a range of light work during the relevant time period.[4] The ALJ's RFC assessment is well-reasoned and supported by substantial evidence. Because of this, Mr. Pettiford's corollary argument—that the hypothetical presented to the vocational expert was improper—must also be rejected. The ALJ's hypothetical question was based upon a consideration of the entire record and included all of Mr. Pettiford's impairments and limitations supported by the record. This argument does not provide a basis to disturb the ALJ's decision.

Mr. Pettiford's third argument is that the ALJ did not properly credit his subjective complaints of pain. This argument is also without merit. The ALJ appropriately followed the two-step process outlined in the regulations for evaluating Mr. Pettiford's subjective complaints of pain and other symptoms. *See Hines v. Barnhart*, 453 F.3d 559, 563-64 (4th Cir. 2006); 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ found that Mr. Pettiford had medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms. (Tr. 30-31.) Second, the ALJ found that Mr. Pettiford's statements regarding his pain and other symptoms were not consistent with other evidence in the record. (*Id.*) The ALJ's decision contains an adequate explanation of her reasoning, including citations to substantial evidence in the record supporting her decision.

For example, the ALJ noted that Mr. Pettiford's description of his pain and other symptoms during the hearing was "somewhat vague and evasive overall." (Tr. 31.) In addition, Mr. Pettiford's testimony was not entirely consistent his treatment records. Although he stated that he experienced "extreme drowsiness" as a side effect of his medication, his treatment records do not contain any such reports. (*Id.*) And although he reported experiencing pain that "prohibits postural activities and sitting for long periods of time," his medical records demonstrate that his pain levels have generally improved over time and with pain medication. (Tr. 31-32.) Mr. Pettiford's citation to Dr. Higgs-Shipman's assessment does not lend support to his argument because, as explained above, this assessment was properly assigned little weight by the ALJ. For these reasons, Mr. Pettiford's third argument is without merit.

For the reasons set forth herein, Mr. Pettiford's Motion for Summary Judgment (ECF No.

---

[4] Mr. Pettiford argues that the ALJ's failure to comment on his reported pain levels in early 2014 undermines her decision. But the ALJ was not required to mention every piece of evidence, *see Morris v. Comm'r, Soc. Sec. Admin*, No. SAG-12-3729, 2013 WL 5883383, at *2 (D. Md. Oct. 29, 2013), and it is not clear to this Court that this evidence contradicts the ALJ's decision. Although Mr. Pettiford reported increased pain levels, the treatment notes from that time period do not document more significant physical abnormalities, and his pain management physicians did not modify his pain medication regimen. (Tr. 627-37.) *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").

14) will be DENIED, and the Commissioner's Motion for Summary Judgment (ECF No. 15) will be GRANTED. The Clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

            Sincerely yours,

            _____/s/_____
            Timothy J. Sullivan
            United States Magistrate Judge